1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15

| | |
|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, *et al.*, <br><br> Defendants. | 1:08-CV-00903 OWW GSA <br><br> ORDER RE VIANT'S MOTION TO DISMISS (DOC. 9). |

16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Plaintiff, Doctors Medical Center of Modesto, Inc. ("Doctors Medical"), a provider of medical services, filed a complaint in the Superior Court for the County of Stanislaus against the Guardian Life Insurance Company of America ("Guardian Life"), the insurer of a patient treated by Doctors Medical, and Viant Payment Systems, Inc. ("Viant"), to whom Guardian forwarded its claims for processing, adjustment, and pricing during the relevant time period.  *See* Compl., Doc. 1.  The case, which raises claims of breach of oral contract, breach of implied contract, *quantum meruit*, negligent misrepresentation, and intentional interference with contractual relations, was removed

1

1  to the District Court for the Eastern District of California by

2  Guardian Life on the basis of diversity jurisdiction.  Doc. 1,

3  filed June 26, 2008.

4      Before the court for decision is Viant's motion to dismiss

5  for failure to state a claim pursuant to Federal Rule of Civil

6  Procedure 12(b)(6).  Viant, which is only named in the Fifth

7  Cause of Action for intentional interference with contractual

8  relations, argues that this state law claim is preempted by the

9  Employment Retirement Income Security Act of 1974 ("ERISA"), 29

10  U.S.C. § 1132, *et seq.*.  Doc. 9 at 4-6.  Alternatively, Viant

11  argues that the Complaint fails to state a claim upon which

12  relief may be granted.  *Id*. at 6-7.

13

14                    II.  BACKGROUND

15      From March 8, 2006 through March 10, 2006, "Patient J.P.M."

16  received medical care from Doctors Medical.  Prior to providing

17  this care, Doctors Medical verified with Guardian Life that

18  Patient J.P.M. was enrolled in a Guardian Life health benefit

19  plan, that Guardian Life had authorized the medical care that

20  would be provided, and that Patient J.P.M. was eligible to

21  receive benefits.  Compl. at ¶¶ 11-12.

22      Doctors Medical billed charges on those dates totaling

23  $158,417.96 and submitted final bills to Guardian Life.  *Id*. at

24  ¶13.  Guardian Life then forwarded the bills to Viant and

25  assigned the claims to Viant for adjustment, further handling,

26  and pricing.  *Id*. at ¶14.  On May 2, 2006, Guardian Life paid

27  Doctors Medical a total of $56,271.00.  *Id*. at ¶15.  Doctors

28  Medical disputed the amount of the payment, but Guardian Life

                              2

1  refused to make additional disbursements, claiming that the total

2  billed charges were neither "reasonable" nor "customary" based on

3  Viant's review of the claims.  *Id*. at ¶16.

4      Doctors Medical alleges that it has exhausted all available

5  pre-litigation remedies.  *Id*. at ¶19.

6

7              III.  <u>STANDARD OF DECISION</u>

8      Federal Rule of Civil Procedure 12(b)(6) provides that a

9  motion to dismiss may be made if the plaintiff fails "to state a

10  claim upon which relief can be granted."  The question before the

11  court is not whether the plaintiff will ultimately prevail,

12  rather, it is whether the plaintiff could prove any set of facts

13  in support of his claim that would entitle him to relief.  *See*

14  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint

15  should not be dismissed unless it appears beyond doubt that

16  plaintiff can prove no set of facts in support of his claim which

17  would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d

18  977, 980 (9th Cir. 2002).

19      In deciding whether to grant a motion to dismiss, the court

20  "accept[s] all factual allegations of the complaint as true and

21  draw[s] all reasonable inferences" in the light most favorable to

22  the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

23  Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983

24  (9th Cir. 2002).  A court is not "required to accept as true

25  allegations that are merely conclusory, unwarranted deductions of

26  fact, or unreasonable inferences."  *Sprewell v. Golden State*

27  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

28

                            3

1          IV.   **ANALYSIS**

2      A.   **ERISA Preemption.**

3      Viant first argues that the intentional interference with

4  contractual relations claim against it is preempted by ERISA.

5  "The purpose of ERISA is to provide a uniform regulatory regime

6  over employee benefit plans." *Aetna Health, Inc. v. Divila*, 542

7  U.S. 200, 208 (2004). "To this end, ERISA includes expansive

8  pre-emption provisions.... which are intended to ensure that

9  employee benefit plan regulation would be 'exclusively a federal

10 concern.'" *Id*. ERISA's preemption provision provides:

11           Except as provided in subsection (b) of this section,
             the provisions of this subchapter and subchapter III of
12           this chapter shall supersede any and all State laws
             insofar as they may now or hereafter relate to any
13           employee benefit plan described in section 1003(a) of
             this title and not exempt under section 1003(b) of this
14           title....

15 29 U.S.C. § 1144.  This provision has been interpreted broadly to

16 apply to "any state-law cause of action that duplicates,

17 supplements, or supplants the ERISA civil enforcement remedy"

18 because any such cause of action would "conflict[] with the clear

19 congressional intent to make the ERISA remedy exclusive...."

20 *Aetna*, 542 U.S. at 209.

21      If a cause of action falls within ERISA's scope, it is

22 preempted.  ERISA § 502(a)(1)(B) provides:

23           A civil action may be brought-(1) by a participant or
             beneficiary-... (B) to recover benefits due to him
24           under the terms of his plan, to enforce his rights
             under the terms of the plan, or to clarify his rights
25           to future benefits under the terms of the plan.

26 29 U.S.C. § 1132(a)(1)(B).  The terms "employee welfare benefit

27 plan" and "welfare plan" mean:

28           [A]ny plan, fund, or program which was heretofore or is

                                    4

> hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002.

Viant asserts that the intentional interference claim falls within ERISA's scope, citing *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41 (1987). *Pilot Life* concerned claims brought by the beneficiary of an employee disability benefit plan, who sought permanent disability benefits following an accident. *Id*. at 43. Pilot Life terminated Dedeaux's benefits after two years, and, during the following three years, reinstated and terminated his benefits several times. *Id*. Dedeaux then filed suit against Pilot Life, alleging tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. *Id*. Pilot Life moved for summary judgment, arguing that ERISA preempted all of Dedeaux's common law claims. *Id*.

The Supreme Court reasoned that the state law causes of action "relate to" an employee benefit plan and therefore fall under the preemption clause. *Id*. at 47.

> In both *Metropolitan Life* [*Ins. Co. v. Mass.*, 71 U.S. 724 (1985)] and *Shaw v. Delta Air Lines, Inc.*, 463 U.S. [85] 96-100 [(1983)], we noted the expansive sweep of the pre-emption clause. In both cases "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Metropolitan*

5

> *Life, supra*, 471 U.S., at 739, quoting *Shaw v. Delta Air Lines, supra*, 463 U.S., at 97. In particular we have emphasized that the pre-emption clause is not limited to "state laws specifically designed...to affect employee benefit plans." *Shaw v. Delta Air Lines, supra*, at 98. The common law causes of action raised in Dedeaux's complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a).

*Id.* at 47-48 (parallel citations omitted).[1]  Viant maintains that the claims in this case are preempted by ERISA because they "relate to" the ERISA benefit plan held by the patient served by Plaintiff.  Doc. 16 at 2.

    Doctors Medical argues that *Pilot Life* is distinguishable, because it concerned a claim brought by a beneficiary, rather than a third party.  Doctors Medical maintains that the present case is more like *Cedars-Sinai Medical Center v. National League of Postmasters of the United States*, 497 F.3d 972 (9th Cir. 2007), which concerned a state law suit brought by a hospital against a health benefits provider to recover the outstanding balance on medical claims partially paid by the benefits plan. *Id.* at 975.[2]  The parties disputed whether the claims "relate[d]

_____

    [1]  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987), held that there are two requirements for complete preemption:

    [2]  *Cedars-Sinai* concerned the Federal Employee Health Benefits Act ("FEHBA"), rather than ERISA.   FEHBA's preemption provision provides:

> The terms of any contract under this chapter which <u>relate to the nature, provision, or extent of coverage or benefits</u> (including payments with respect to benefits) shall supersede and preempt any State or

to" a "benefit" for purposes of preemption. *Id*. at 977. *Cedars-Sinai* distinguished *Botsford*, a FEHBA preemption case in which the preempted state law claims were brought by "a plan enrollee for reimbursement related to the benefits that <u>he</u> received from a medical provider," on the ground that Cedars-Sinai was a third party hospital that could not be considered a "covered individual" or other relevant party under FEHBA or its implementing regulations. *Id*. Accordingly, Cedars-Sinai's claims arose from the health plan's contractual obligation to Cedars-Sinai, and did not "relate" to "benefits" owed to the patient. *Id*.

In reaching its conclusion in *Cedars-Sinai*, the Ninth Circuit reviewed relevant ERISA caselaw:

> Cedars-Sinai first cites to *The Meadows v. Employers Health Insurance*, 47 F.3d 1006 (9th Cir.1995). In that case, we held that ERISA did not preempt the plaintiff health care provider's state law claims for breach of contract, estoppel, and negligent misrepresentation. The claims arose out of the defendant health insurer's representation to the plaintiff health care provider that the wife of one of defendant's former employee's was covered by the plan's policy. *See id*. at 1007. After services were rendered, the defendant refused to reimburse or recognize an obligation to the plaintiff, despite prior assurances of coverage. *See id*. at 1008.

---

> local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1)(emphasis added). The Ninth Circuit has held that FEHBA's preemption provision "closely resembles ERISA's express preemption provision, and precedent interpreting the ERISA provision thus provides authority for cases involving the FEHBA [preemption] provision." *Botsford v. Blue Cross & Blue Shield of Montana, Inc.*, 314 F.3d 390, 393-94 (9th Cir. 2002). There is no reason why FEHBA cases should not similarly provide authority in ERISA cases.

7

1

\*\*\*

2    We recognized that ERISA preempts the state claims of a
3    provider suing as an assignee of the beneficiary's
     rights to benefits under an ERISA plan. *See The*
     *Meadows*, 47 F.3d at 1008 []. However, we held that
4    ERISA does not preempt "claims by a third-party who
     sues an ERISA plan not as an assignee of a purported
5    ERISA beneficiary, but as an independent entity
     claiming damages," *id*., because such claims do not
6    "relate" to ERISA preemption, *id*. at 1009.

7    Here, Cedars-Sinai is suing as a third-party claiming
     damages, and not as an assignee of rights to benefits.
8    Thus, *The Meadows* supports Cedars-Sinai's position that
     its claims do not "relate to" FEHBA and consequently
9    are not preempted by FEHBA.

10   Cedars-Sinai also cites to *Memorial Hospital System v.*
     *Northbrook Life Insurance Co.*, 904 F.2d 236 (5th
11   Cir.1990), a case we cited with approval in *The*
     *Meadows*. Like *The Meadows*, the plaintiff hospital in
12   Memorial Hospital relied on the defendant employer and
     the employer's health insurer's representation that the
13   employee's wife was covered by the plan, stating that
     "it would not have extended treatment to her without
14   such assurances of payment." *Id*. at 238. The plaintiff
     filed suit asserting a breach of contract claim for
15   benefits (as the employee's assignee) and claims for
     negligent misrepresentation and equitable estoppel
16   (brought in its independent status as a third-party
     health care provider.) *See id*. at 239. The district
17   court held that the plaintiff's breach of contract
     claim was preempted because the claim "related to" a
18   claim for benefits under an ERISA plan. *See id*.
     However, the district court held that the plaintiff's
19   third-party claims were not preempted because they were
     not assigned claims; they did not "relate to" the ERISA
20   plan because the claims "could stand alone absent any
     issue regarding the application of a welfare benefit
21   plan." *Id*.

22   The Fifth Circuit took up the appeal and affirmed in
     part and vacated in part. In *Memorial Hospital*, the
23   court affirmed the district court's finding that the
     plaintiff's assigned claims were preempted, noting that
24   "[i]t is clear that ERISA preempts a state law cause of
     action brought by an ERISA plan participant or
25   beneficiary alleging improper processing of a claim for
     plan benefits," *id*. at 245, and, as an assignee, "[the
26   plaintiff] stands in the shoes of [the employee] and
     may pursue only whatever rights [the employee] enjoyed
27   under the terms of the plan," *id*. at 250.

28

8

To better analyze the plaintiff's non-derivative claims, the court in *Memorial Hospital* articulated a test, recognized by *The Meadows...,* that emphasizes unifying characteristics of cases where ERISA preemption was found:

> (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Memorial Hospital*, 904 F.2d at 245. Applying this test, the court in *Memorial Hospital* held that the plaintiff's non derivative claims were not preempted because those claims did not fit into either category. *See id.* at 245-46.

Because the court found that the plaintiff's non-derivative claims did not "relate to" the ERISA plan, and were consequently not preempted, Memorial Hospital supports Cedars-Sinai's assertion that its non-derivative claims are not preempted by FEHBA. *See also Cypress Fairbanks Med. Ctr. Inc., v. Pan American Life Ins. Co.*, 110 F.3d 280, 283 (5th Cir.1997) (reinforcing *Memorial Hospital's* holding that nonderivative third-party claims do not "relate to" ERISA and are, therefore, not preempted).

Finally, Cedars-Sinai cites to *Hoag Memorial Hospital v. Managed Care Administrators*, 820 F.Supp. 1232 (C.D.Cal.1993). In *Hoag*, the plaintiff hospital brought an action against the defendant employer and the employer's benefit plan, seeking recovery of fees for treatment for one of the defendant's employees. *See id.* at 1233. The defendants had made representations to the plaintiff that the employee was covered, but later stated that an exclusion applied to deny coverage. *See id*. The plaintiff sued because the plan refused to reimburse it for any treatment. *See id.*

Reviewing the plaintiff's claims, the district court noted that the plaintiff's initial complaint "suggested" that it may have been suing under the plan as the employee's assignee. *Id.* at 1234. The plaintiff then amended its complaint to remove any derivative claims and to assert only third-party claims for damages based solely on the defendants' alleged misrepresentations of coverage. *See id*. Relying heavily on *Memorial Hospital*, because there was no guiding Ninth Circuit precedent, the district court found that the plaintiff's claims were not preempted by FEHBA. *See*

> *id*. at 1235-37. Because the plaintiff hospital was a third-party with nonderivative claims, the court found that the plaintiff's claims did not "relate to" the ERISA plan. *Id*. at 1236 ("Hoag Memorial's claims to recover promised payment from the employer and the administrator of the Plan must be distinguished from an action by an ERISA participant or beneficiary to recover benefits under the terms of the plan. It is this Court's opinion that ERISA's preemption provision was intended to preclude the latter, not the former."). The district court's holding in *Hoag* that third-party claims that do not involve assigned rights to benefits are not preempted by FEHBA is persuasive and bolsters Cedars-Sinai's position that its claims for reimbursement are not preempted.

*Id*. at 978-980 (footnotes omitted).

In *The Meadows*, *Memorial Hospital*, and *Hoag*, the employers and/or health plans' represented that a patient and/or certain treatments would be covered by the plan, but later repudiated those representations.  In all three cases, the state law claims arising out of that repudiation were not preempted by ERISA.

The circumstances in *Cedars-Sinai* were somewhat different, as the hospital was disputing the amount of reimbursement eventually paid out under a FEHBA-covered health plan pursuant to the health plan's "independent contractual obligation to pay for the care and treatment provided...."  *Id*. at 975.  Nevertheless, the *Cedars-Sinai* court followed *The Meadows*, *Memorial Hospital*, and *Hoag*, finding that Cedar-Sinai's claims were not preempted.

A similar conclusion is appropriate here, where the claims are essentially identical to those brought in *Cedars-Sinai*. Here, Doctors Medical alleges that Guarantee Life had an independent contractual obligation to pay for the care and treatment provided to Patient J.P.M., and that Viant intentionally interfered with Guarantee Life's contractual obligations.  Doctors Medical is suing as a third party, not as

10

an assignee of a purported ERISA beneficiary.  Under *Cedars-Sinai*, *The Meadows*, *Memorial Hospital*, and *Hoag*,[3] Doctors Medical's claims are not preempted by ERISA.

Viant's reply contains the following final "hail-Mary" paragraph:  "This Motion has presumed that the Complaint is brought under an employee benefit plan, and thus ERISA (which is not disputed in the Opposition).  If that is not the case, there are insufficient facts alleged in the Complaint to put the defendant on notice of other claims."  Doc. 16 at 2.  The authorities discussed above amply explain how a claim can arise out of a transaction that involves an ERISA benefit plan while nevertheless not be "related" to that plan for purposes of preemption.

Viant's motion to dismiss on this ground is DENIED.


B.   **The Complaint States a Claim for Intentional Interference with Contractual Relations.**

In the alternative, Viant argues that the Fifth Cause of Action fails to state a claim for intentional interference with contractual relations.  Doc. 9 at 6-7.  The elements of this tort are:

> (1) a valid contract between plaintiff and a third party;
>
> (2) defendant's knowledge of this contract;
>
> (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;

---

[3] Despite the obvious relevance of these cases, Viant addresses none of them in its briefs.

11

1         (4) actual breach or disruption of the contractual

2    relationship; and

3         (5) resulting damage.

4  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126

5  (1990).

6    The Fifth Cause of Action for intentional interference with

7  contractual relations against defendant Viant alleges:

8        48.   [Doctors Medical] incorporates by reference and
re-alleges paragraphs 1 through 19 here as though set

9        forth in full.

10       49.   The contracts alleged above constituted valid
contracts between [Doctors Medical] and Guardian Life.

11

12       50.   Viant was aware of the existence of the contracts
alleged above, and was specifically knowledgeable that
those contracts existed between Hospital and Guardian

13       Life.

14       51.   Viant repeatedly and improperly interfered in the
aforementioned contractual relations between [Doctors

15       Medical] and Guardian Life by convincing Guardian life
to withhold full and proper payment to [Doctors

16       Medical] on the pretext that Guardian Life had such a
right pending the outcome of an audit of [Doctors

17       Medical's] claims regarding Patient J.P.M. for Viant's
determination of a "reasonable customary" value for

18       [Doctors Medical's] services.

19       52.   In reality, Guardian Life had no right to withhold
that payment to [Doctors Medical] based upon that

20       nonexistent right.   [Doctors Medical] is informed and
believes and thereon alleges that Viant knew Guardian

21       Life had no such right and counseled Guardian Life to
withhold full payment in the belief that [Doctors

22       Medical] would compromise the full amount of its claim
simply due to a desire to avoid the expense and effort

23       needed to collect the proper amount due (and not
because of any substantive merit to Viant's advice) and

24       that Viant would be compensated based upon a percentage
of such ill-gotten gain, had [Doctors Medical]

25       capitulated.

26       53.   As a direct and proximate result of Viant's
intentional conduct, Viant induced Guardian Life to

27       abjure from Guardian Life's contractual duty to fully
pay [Doctors Medical] as described above.

28       Consequently, [Doctors Medical] has suffered damages in

1          the sum of $102,146.96.

2   Compl. at ¶¶ 48-53.

3       Viant asserts that "paragraph 50 of the Complaint fails to

4   state what contract is allegedly interfered with," and that "even

5   if true, the allegations of paragraph 51 do not adequately allege

6   an intentional interference as required."  Doc. 9 at 7.

7       Doctors Medical points out that paragraph 48 incorporates by

8   reference the contents of paragraphs 1 through 19.  Paragraph 9

9   states:

10              At all relevant times, Guardian Life had entered into
                various oral, implied-in-fact, and/or implied-at-law
11              contracts with [Doctors Medical].  According to the
                terms of these contracts, [Doctors Medical] agreed to
12              render medically necessary care to Patient J.P.M.  In
                exchange, Guardian Life agreed to pay [Doctors Medical]
13              for the medically necessary care rendered to Patient
                J.P.M.
14
    This allegation sufficiently identifies and describes the
15
    contracts at issue, *see Khoury v. Maly's of Calif., Inc.*, 14 Cal.
16
    App. 4th 612, 616 (1993)(oral contract may be pleaded generally
17
    as to effect because it is rarely possible to allege exact
18
    words), particularly in light of the liberal pleading requirement
19
    set forth in Federal Rule of Civil Procedure 8.
20
    //
21
    //
22
    //
23
    //
24
    //
25
    //
26
    //
27
    //
28

                                      13

Viant's conclusory assertion that "the allegations of paragraph 51 do not adequately allege an intentional interference as required," is similarly unfounded, as the other paragraphs within the Fifth Cause of Action contain specific allegations regarding the remaining elements.

Viant's motion to dismiss on this ground is DENIED.

## V.   CONCLUSION

For the reasons set forth above, Viant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated:   **January 26, 2009**                    **/s/ Oliver W. Wanger**
                                    **UNITED STATES DISTRICT JUDGE**